And we'll move to our third case this morning. Mervyn v. Atlas Van Lines, case number 17-2036. May it please the Court. This case deals with the protections afforded to owner-operators under the federal truth in leasing regulations. The district court disregarded the regulations when it granted plaintiff defendants motion for summary judgment on plaintiff's regulatory and breach of contract claims. In the process the district court drew all inferences in the defendant's favor both in terms of interpreting the contract and in disregarding the meaning and protections of the regulations afforded to these owner-operators. The federal truth in leasing regulations were promulgated to protect owner-operators by promoting full disclosure and ensuring their economic stability by eliminating skimming tactics. Eliminated what? Skimming tactics. Skimming. Skimming tactics. Would you like me to elaborate what I mean by skimming tactics? No, I just didn't understand the word skimming. I know we've read that. That's what's going on, right? Subsection 12d of the regulations requires and mandates that the carrier, in this case the defendants, clearly state in the lease the amounts to be paid to the drivers. Is that when they sign the contract or is it a given amount? Yes, your honor. It's got to be on the face of the lease. It has to clearly state, at the very least, how the amounts are going to be calculated. When he signs the whatever, it goes back and forth. I understand the owner-operator owns the truck. That's correct. And he may have a mortgage with the bank while he's paying off his truck. Okay, so he leases to Atlas. That's correct, your honor. So yes, I may be referring to a lease here, but it is a contract or an owner-operator agreement between plaintiff, the owner-operator, and the defendants. Is there a cause of action for violation of this regulation? Yes, there is, your honor. That's been recognized in several cases. One particular is owner-operator association versus bulkmatic. And the statute, the underlying Motor Carrier Act statute, says that if there's a violation, a private party is entitled to damages resulting from a violation of the regulations. The statute says that? Yes, your honor. Here, defendants used skimming tactics to pay Mervyn less than he was owed under the lease. The types of skimming tactics found here include what the defendants refer to as freebies and kickback rebates to themselves. This resulted in Mr. Mervyn receiving less than he was owed under the lease. At the end of the day, defendant skimming tactics were maintained on a second set of records not seen by the customer. The lease required defendants to pay Mr. Mervyn 58% of the line haul charge. What was it? 58, did you say? 58% of the line haul charge. This is spelled out in Schedule B1 of the lease, which can be found at separate appendix, page 21. In particular, Section A1A of that schedule states that line haul charges and accessorial service charges shall be determined by an effective or predetermined effective bottom line discount. Now, admittedly, effective bottom line discount and predetermined effective bottom line discount are not defined terms in the lease. A lease drafted and prepared as required by the regulations by the defendants. But the critical issue here is what those discounts are intended to determine. And they are limited in scope and function to determining the line haul charge. No less, no more than the line haul charge. Is the line haul charge determined at the beginning of the contract? Typically there is an estimated line haul charge, but then ultimately, for instance, a representative of the carrier agent may go to a person's home, evaluate, and provide some sort of estimate as to the weight of all the property being shipped. And then the calculation between the mileage and the weight of the shipment. But that's just an estimate at first. Well, the thing that bothers me is the fuel. What do you call the fuel? The fuel surcharge, yes. That fuel surcharge is a reimbursement to the driver. The driver must pay his own fuel cost. Yeah, but is that 100% of what he pays? Or is that an estimate also? Because, you know, diesel goes up and down while you're on the trip. That's right. And that's the whole purpose behind the fuel surcharge is to account for the rising price of diesel. So he should get, the driver should get 100% of the fuel. That's correct. Without, regardless of how much it is. That's correct. And if you look on Schedule B-1, line haul charges and accessorial service charges are subject to a discount. Fuel surcharge is not. The defendants admit in their summary judgment papers that there are two fuel surcharge amounts that they consider during a shipment. One, the fuel surcharge amount, and then another, a discounted fuel surcharge amount that they decide to charge to their customers. How does it get discounted? It's whatever they paid. It's discounted because, for instance, on the Evans shipment, the fuel surcharge amount was, I believe, around $2,000. The discounted amount charged to the customer was $815,000. But the lease says he gets 100% of the fuel surcharge. And while the line haul charge is subject to a discount, as I mentioned previously, fuel surcharge is not. Well, so the driver doesn't eat that bargain that the purchaser got? I'm sorry? The bargain. I don't know what I want to call it. A bargain or whatever. They got some kind of reduction. You just said it went from $2,000 to $800. Yes. And the significance here is when the defendants discount fuel surcharge, that's one of the few items that they don't share in the percentage of recovery from the customer. So the driver gets 100% of the fuel cost? That's correct. That's correct. Well, 100% of the fuel surcharge. Okay. I distinguish between the cost and what he pays and what the charge is. I guess it's the same thing, isn't it? No, Your Honor. The defendants make this argument about how there can only be, you know, a fuel surcharge has to be something that's charged to the customer. But as I mentioned before, in a docket, Who's passed on to the customer. Who's the customer? The customer is the shipper. The person whose goods are being shipped. Passed on to the customer. Yeah. Okay. But the whole thing, you just started it out saying that this whole thing is to protect the owner-operator. That's correct. So the owner-operator is the person that's supposed to get 100% of whatever he pays when he's driving the truck. 100% of the fuel surcharge, which is different than 100% of what he pays. And there's no in fuel, for example, on the Evans shipment, even covered as fuel costs. Well, okay. With respect, yes. You're going to have to contend with paragraph 11F. Yes, Your Honor. That provision is not a bar to Mr. Mervin's claims for a number of reasons. One, the term prima facie, which at most creates a rebuttable presumption concerning the correctness of the payment documents, cannot be rendered meaningless. Two, as we explained in our briefs, the 30-day provision is both unreasonable as a matter of law and on the facts here. There has been no case cited where such a short time period is held to be enforceable given this regulatory backdrop. Again, the purpose of this regulation is to protect owner-operators by promoting full disclosure and ensuring their economic stability. And here, section 11F is littered with vague terms. Yes, it does say conclusively presumed correct. But then it says that that results in a rebuttable presumption. That is no clear bar to his claims. Additionally... The district court took most of this out based on the 30 days, right? Yes, Your Honor. But the district court also made some rulings on the merits. But does that answer your question? That's part of it, though. Yes. Another issue is that 30 days is unreasonable on the facts of this case. When Mr. Mervin, after Mr. Mervin hauled a shipment, money would be deposited within a certain period of time into his operating account. It's called an operating account. And days and perhaps sometimes weeks later, he would get a payment document. Maybe several payment documents. And sometimes he received multiple payment documents, never being told when the last one he received was the final one. So he's on the road doing interstate transports, and he's expected, despite also getting multiple settlement sheets, to assert his claims and protect his claims under the regulations within 30 days, and oftentimes much less than 30 days. That is unreasonable on its facts, and I believe that a jury is entitled to hear those facts. Finally, under pursuant- Well, this is a legal issue. The enforceability of 11F is a legal issue. I'm glad you also raised the enforceability of this. It is unenforceable as a matter of public policy, as the court in Al-Anazi versus Bill Thompson Transport held. Permitting carriers to avoid liability by including- let's just, for sake of argument, include that prima facie, the prima facie language was absent. But it cannot be rendered meaningless, and at best, it creates a rebuttable presumption. But let's assume for the moment that it doesn't exist. In Al-Anazi, it said, permitting carriers to avoid liability by imposing- and in that case, it was a 90-day provision- would defeat the very protections afforded to these drivers under the truth in leasing regulations. Defendants make arguments about how this process of using freebies and rebates is somehow a fair way of distributing monies from a shipment. I'd be remiss if I didn't point out exactly why that's not true. One of the freebies, and that's their term, freebies, that the defendants used, and the example of which is on the Evans shipment, is the full value protection insurance freebie. Now, a customer, when their goods are being shipped, can elect to purchase what's called full value protection insurance, which would provide them the full replacement value of their goods if damaged. What happens is, is when they give that away to the customer, they pretend that somehow nobody's paying for it. But we see in defendants' documents that Mervyn's line haul compensation, which must be based upon the charge but was not, is reduced. So in effect, he is the one that's paying for that insurance. You have seven trips involved in this claim, right? Yes, Your Honor. Can you give me some number on each trip, what was skimmed or whatever you're talking about, the loss? I don't have that on the record, Your Honor. But for purposes of responding to summary judgment, I think referring to one shipment alone is sufficient to create a question of fact. And what was that? How much? What do you know? Well, he was not paid 58% for the $258 freebie. He was not paid 58% for the $166 kickback rebate. And his line haul, he should have been paid 58% of $7,100, and instead he was paid 58% of $6,600. If there are no further questions, I reserve the remainder of my time for rebuttal. That's fine. Good morning, mate. Please the court. My name is Justin Weiner. I represent the Appellees, Atlas Bandlines, Inc., and Ace Worldwide Moving and Storage Company. Your Honors, Plaintiff Thomas Mervin brought a putative class action based on, as he said today, seven shipments that he hauled for Ace, under which he argues that he was underpaid under the terms of his lease. The district court granted summary judgment for Mervin, and rightfully so. Mervin's claims fail for a host of reasons, all of which, most of which, are independent of each other, meaning that on this appeal, Mervin must win on each and every one of these arguments in order to win a remand. Now, before I get to the reasons for which the district court was correct in granting summary judgment, I'd like to address first just what are Mervin's claims, because as we noted in our briefs, that is something that has shifted over time and continues to shift to this day. Now, Mr. Mervin, counsel told you this morning that his claims stem from Section 376.12d, a requirement that the lease clearly state his compensation. That argument, Your Honor, however, has been waived. In addition to being waived, Mr. Mervin has argued time and time again that this is a breach of contract case. Even in his briefs now, when he argues and he makes smatterings of arguments about clearly And here I can point, Your Honors, to his opening brief, page two, issue number one, where he states that the issue is whether the carrier can pay an owner-operator less than an amount explicitly stated in the contract. And in his reply at pages 10 and 11, where he argues that the issue here is defendant's failure to, in his words, adhere to the provisions of the lease by paying owner-operators less than they were entitled to. Now, Your Honors, those claims fail on their merits, as I said, for a number of reasons. First, Mervin failed to comply with paragraph 11F of his lease, which requires that he dispute financial entries on his payment documents, the line haul and fuel surcharge that were stated on the documents that he received, within 30 days of receiving those payment documents. Second, the claims all fail because Mervin was paid what his lease entitled him to. His lease required that he be paid line haul as determined by the applicable effective bottom line discount. He was paid that. His lease required that he be paid fuel surcharge, not the tariff rate fuel surcharge. And he was paid 100% of the fuel surcharge. Relatedly, but not insignificantly, Is that never the case? He's paid 100% of the fuel surcharge? Yes, Your Honor. And Judge Manning, I noted that you had some questions about fuel surcharge. I think there is some clarification that needs to be made here. The fuel surcharge in Mervin's contract is not tied to the price of fuel. It doesn't change with the price of fuel. Fuel surcharge is an amount that Atlas is allowed to charge the customer. It can discount that amount, and then the customer pays whatever Atlas tells it to pay or whatever they negotiate with respect to that particular item. But it's not something that's tied in any way to the cost of fuel to Mervin. So it's an amount that is paid by the customer. And then 100%, and this is undisputed, 100% of whatever the customer paid was always passed through directly to Mervin. Now, what if the customer pays less than the cost of the fuel? That's under the contract and under the lease. That's irrelevant, Your Honor. It's what? It's irrelevant. The contract provides that Mervin was to be paid 100% of the fuel surcharge. It's just a line item that Atlas is permitted to charge. Well, I guess I'm trying to look at it from the truck driver's point of view. There's an actual cost for fuel. It is, Your Honor. It might be more than that, whatever you call it. That's the surcharge. I guess what frustrates me here is there's trucks all over the road. I don't know how many of them would come under this where you have an owner operator, but owners are paying a bank, usually, for a $200,000, $300,000 truck. And so they've got that to pay, and then they come back and enter into this lease. They lease their truck to Atlas and then get paid a certain amount. And frankly, I find this whole thing pretty complicated. Well, Your Honor, I think it's actually pretty simple. In actuality, in paragraph three, I'm sorry, section three of Mervin's lease, Mervin is responsible already from the beginning for his fuel costs. This fuel surcharge is just another item that he can be compensated for. It's something else that Atlas can charge customers. But the baseline fuel costs, by the plain terms of the lease, already belong to Mervin. It's only when we get to this additional thing called a fuel surcharge that Mervin gets some pass through, some compensation. And under the terms of his lease, good deal, bad deal, or otherwise, that is what he agreed to be paid, and that's the compensation he agreed to. Now, Mr. Mervin is now arguing that he is entitled to the full tariff rate fuel surcharge. But the tariff rate, Your Honor, what I mean by that is the maximum amount that Atlas is permitted to charge to its customers. But that's not what the lease says. It says fuel surcharge. And the lease, the party showed that when they negotiated the lease, they were able to use tariff-based rates and reference tariff-based rates when they wanted to. In this particular provision, they did not. So Mervin was entitled to only what the customer paid. So all these things in the agreement are clearly stated. Because I know I saw some phrase like that in there that's got to be clearly stated. Yes, Your Honor. Okay. And that seems to be a debate, whether it's clearly stated. Your Honor, it's actually not a debate in this case. Mr. Mervin's matters throughout his pleadings and throughout his papers here, references to something being clearly stated. But in point of fact, his real argument at the end of the day is he was entitled to X, and he thinks the lease says X, whereas we say it was Y. So with respect to fuel surcharge, his argument is not it's unclear. His argument is that he gets the full tariff rate. That's wrong for the reasons I explained. And that's just a breach of contract claim. That's not a regulatory violation claim. That's exactly right, Your Honor. It's just a straight breach of contract claim. Same thing with respect to his line haul. Mr. Mervin argues that he's entitled to the line haul, the actual line haul the customer paid, or phrases in different ways, the line haul after the final discount the customer pays. But again, that's not what the lease says. The lease says line haul after application of the effective bottom line discount. And before I go there, though, Your Honors, I'd like to turn to paragraph 11-F of his lease, because that paragraph required Mervin to dispute financial entries on his payment documents within 30 days of receiving them. There's no dispute here that Mr. Mervin never did that. So accordingly, by operation of paragraph 11-F, those entries for line haul and fuel surcharge are conclusively presumed correct and final. Now, Mr. Mervin argues that paragraph 11-F only creates a prima facie or rebuttable presumption. That's not right. Mr. Mervin is ignoring the fact that there are two sentences in paragraph 11-F. The first creates this conclusive presumption of correctness and finality for the financial entries, the individual entries on his payment documents, like line haul and fuel surcharge. The second creates a rebuttable presumption that Mervin was actually paid the full amount that he was entitled to. So, and that's for financial transactions under the second sentence of that paragraph. So an example will help illustrate this, I think. If Mr. Mervin's payment documents say he was entitled to $5,000 in line haul, $2,000 in fuel surcharge, after 30 days, he can't rebut those numbers. Those numbers are conclusively presumed correct and final. Is that typical? 30 days? That seems like a short time. Well, Your Honor, there's arguments to the contrary in this record. But in fact, it's not. It's important to, I think, understand the context in which this case comes here. Because Mr. Mervin, although there are only seven shipments at issue here, he actually hauled over 100 shipments for Ace under very similar contracts. And the undisputed record evidence is he never once raised this issue of line haul or fuel surcharge. On top of that, Your Honor. Is this plaintiff? Yes, Your Honor. This plaintiff. On top of that, Your Honor, Mr. Mervin admitted in his deposition transcript that from the very first shipment that he received, he thought he was being undercompensated for line haul and fuel surcharge. And yet he made no objection. The last point I would make, Your Honor, is- Talking about very first shipment of 100, not the seven. Is that what you're talking about? Your Honor, actually, now that you mention that, I'm not clear on whether it's the first of the seven or the first of the 100. But I think it's irrelevant which one applies. Either way, Mr. Mervin was essentially admitting there that he had plenty of time to dispute these numbers. And in fact, it wouldn't be hard for him to make a dispute. A phone call, an email, any of those would suffice. On top of that, Your Honor, you've heard counsel argue that Mr. Mervin was on the road.  First, again, our position on that would be good deal, bad deal. Under the Ash Park case in Wisconsin law, the court cannot reform a deal to make it better for the plaintiff. He has to live with it. But more importantly, it was also undisputed on this record, and I believe this is in paragraph 72 or 73 of our statement of material facts, that Mr. Mervin was often not on the road when these payment documents were sent. So the 30 days was entirely reasonable, entirely capable, he was entirely capable of complying with them. Now, Mr. Mervin argues that paragraph 11F is void as against public policy. But that ignores the East Associated Coal case from the Supreme Court that we cite in our briefs. And there, the Supreme Court said that the public policy must be dominant, must be dominant within positive law. And that's not the case here, because here, we also have a public policy of freedom of contract. And that's no different than the public policy the court relied on in East Associated Coal, which is a public policy of not interfering with labor management relations. There, that was enough for the Supreme Court not to invalidate a contractual provision. The same holds true here. Finally, to briefly address the effect of bottom line discount, as I noted, Mr. Mervin's request to be paid on line haul, based on that, Mr. Mervin argues that he was instead entitled to whatever the customer paid in line haul. But again, that's not what the lease says. That's clear from the context of the lease. It would make no sense for the lease to say that Mr. Mervin was entitled to something that Atlas negotiated with its customer under a heading that is payments to the contractor under a provision that is clearly meant to be directed to his compensation. And the context of that provision makes clear that the effect of bottom line discount is not a direct discount to line haul. It is something else. The context of that provision makes clear it is a single discount applicable and taking account of both line haul and other charges. And that defeats Mervin's claim that he was entitled to some direct discount to line haul and nothing else. Your Honors, if there are no other questions. The District Court, as I mentioned before, took a whole lot of this out on the 30-day. Isn't that correct? That was one basis for the District Court's holding, Your Honor. The District Court also entered alternative grounds for his decision that the effect of bottom line discount was not what Mr. Mervin said it was, and that fuel surcharge was not what Mr. Mervin said it was. So those also are alternative grounds to uphold and affirm the District Court's judgment. Your Honors, if there are no other questions, we simply ask that the Court affirm the District Court's judgment. Thank you. You've got a minute left. I've got a number of quick points. One, there is no waiver here. The District Court didn't find waiver, and neither should this Court. From the very outset, plaintiff has been arguing the clearly stated requirement. This case is also not just a garden variety breach of contract case, although that claim is valid because under Section 12 of the regulations, there is a clearly stated requirement. But in the preamble of the regulations, it creates an obligation on the defendants to adhere to and perform under their obligations on the lease. So that creates not only a clearly stated full disclosure requirement, but an adherence to the lease. That's just a breach of contract claim. Do what the contract says. Which must be interpreted with reference to the protections afforded to the regulation, because as in Balcomatic, if there's an ambiguity, it must be drawn against the carrier, because otherwise the protections afforded to the owner operators would be eviscerated. Another statement, fuel surcharge is absolutely determined by the price of fuel during a given period of time. And Patricia Dahlman in her deposition testified to that. That's one of the defendant's witnesses. With regard to the public policy argument, here there is a strong public policy argument, which I mentioned from the outset. The federal regulations, it's not just protecting workers' rights, but there are specific protections afforded to these owner operators, including ensuring their economic stability and eliminating skimming tactics. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.